DISTRICT OF OREGON, ss: AFFIDAVIT OF PETER ARDISSONO

## Affidavit in Support of Criminal Complaint And Arrest Warrant

I, Peter Ardissono, being duly sworn, do hereby depose and state as follows:

## Introduction and Agent Background

1. I have been employed as a Special Agent (SA) by the Drug Enforcement Administration (DEA) since 2019. Prior to this, I was a U.S. Customs and Border Protection Officer in Brownsville, Texas, from 2012 to 2013 and served in the U.S. Marine Corps from 2014 to 2019. My current assignment is the Eugene Resident Office. My job assignment includes, but is not limited to, the investigation of violations of Title 21, which includes the detection, identification, and apprehension of those individuals involved in controlled substance trafficking offenses. My training and experience include completion of DEA basic training including the investigation, detection, and identification of controlled substances and conspiracy and complex investigations training. Additionally, I have participated in numerous controlled substance investigations in my employment with the DEA. I have consulted and conversed with numerous other law enforcement personnel from various local, state, and federal agencies on drug cases, including the distribution of heroin, cocaine, methamphetamine, fentanyl, marijuana, and other controlled substances. I have interviewed and operated informants, executed search warrants, arrested, and interviewed subjects involved in the smuggling and distribution of controlled substances, conducted physical surveillance, and utilized electronic surveillance. As a result of this experience and my training, I am familiar with investigations of Drug Trafficking Organizations (hereinafter, "DTOs"), including identifying methods of importation and

distribution of controlled substances, and how controlled substances are manufactured, consumed, packaged, marketed, smuggled, and distributed. I am also familiar with various tactics used by DTOs to import controlled substances into the United States, communicate with members of the DTOs, and arrange for transportation and distribution of controlled substances.

2. I submit this affidavit in support of a criminal complaint and arrest warrant for Nicolas James Roderick (hereinafter "Roderick"), for possession with intent to distribute cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code (U.S.C.), Section 841(a)(1). As set forth below, there is probable cause to believe, and I do believe, that Roderick committed this offense.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested complaint and arrest warrant and does not set forth all of my knowledge about this matter. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation (including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events, and circumstances described herein), and information gained through my training and experience. Unless placed in quotes, the statements of individuals are not direct quotes, but rather the essence of what the individual said.

## Applicable Law

4. Title 21, U.S.C., Section 841(a)(1) provides that it is prohibited for any person to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance including cocaine.

**Investigative Background**

5.      Since October 2023, the United States, including the DEA, Springfield Police Department ("SPD"), Lane County Sheriff's Office ("LCSO") and Oregon State Police ("OSP") have been conducting a criminal investigation into drug trafficking and money laundering. In November 2023, a DEA undercover agent conducted a money pick up of nearly $50,000 from a suspected member of a drug trafficker organization. As part of its investigation, law enforcement conducted surveillance at a residence located at 1979 Pierce Street, Eugene, Oregon, (the Pierce Residence) believed to be used by that member of the drug trafficking organization. In January 2024, Major Eric Jones Jr. (Jones Jr.) moved into the Pierce Residence, having been observed there for the first time about a month prior.

**February 2024 Seizure of Approximately 248.7 Grams of Cocaine**

6.      On February 7, 2024, law enforcement conducted surveillance in the vicinity of the 1979 Pierce Street, in Eugene, Oregon, and observed Jones Jr. exit his residence and get into his Ford Taurus (Oregon plate 9X1419) as the lone occupant and driver of the car. Video surveillance showed that when Jones Jr. entered the Taurus, he was carrying an object that looked like a small box in his left arm.

7.      Surveillance followed Jones Jr. in the Taurus. Surveillance briefly lost sight of the Taurus after it entered the Fred Meyer parking lot. However, moments later, law enforcement observed the Taurus parked near a red Acura CL (Oregon plate 497GJF) in the Home Depot parking lot (808 Seneca Road in Eugene), right next to the Fred Meyer parking lot. A white male wearing a red flannel walked to the Taurus front passenger door. The person removed a small brown box from the passenger side of the Taurus, returned to the Acura, and got

in the driver's seat. Jones Jr. remained in the Taurus and left the area immediately. The white male in the red flannel left moments after the Taurus.

8. Law enforcement continued surveillance on the Acura and at approximately 4:14 p.m., observed the Acura pull into a parking lot in Springfield, Oregon. The driver's door and the trunk of the Acura were both open and the driver was seen standing at the trunk, however, law enforcement was unable to maintain constant visual of what the driver was doing. A few minutes later the Acura was observed leaving the parking lot with the same driver and surveillance continued.

9. At approximately 4:32 p.m., law enforcement conducted a traffic stop on the Acura in the area of Benson Lane in Eugene, Oregon, and identified Roderick, in his red flannel jacket and by his driver's license, as the lone occupant of the Acura. A law enforcement K-9 was deployed on the Acura and alerted to the trunk area of the vehicle. A cardboard box with gray duct tape was located in the trunk of the Acura. Inside the box was a vacuum-sealed chunk of a white substance, which weighed approximately half of a pound. Law enforcement on scene mentioned to Roderick that if the substance was fentanyl, it could be very dangerous for his K-9 partner. Roderick told law enforcement that, "if it was anything it was cocaine." Law enforcement later field-tested the substance, which returned presumptive positive for cocaine and lab results showed a net weight of 248.7 grams. Based on my training and experience, this is an amount for distribution and not for personal use.

10. Law enforcement advised Roderick of his Miranda Rights and was asked if he understood his rights, Roderick advised that he did. Law enforcement asked how much cocaine Roderick possessed, and he responded, "A quarter" (quarter of a kilogram or approximately half

a pound). Roderick stated that he did not know the name of the person that he purchased the cocaine from but described him as a black male. Roderick estimated that he gets his cocaine from the same person approximately every three weeks. Roderick stated that he sells the cocaine to two customers of his own but was unwilling to provide the identity of those customers to law enforcement.

## Conclusion

11.   Based on my training, experience, and knowledge of the investigation, there is probable cause to believe, and I do believe, that Roderick possessed with the intent to distribute cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1). I therefore request that the Court issue a criminal complaint and arrest warrant for Nicolas James Roderick.

12.   Prior to being submitted to the Court, this affidavit, the accompanying complaint, and the requested arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Joseph Huynh, and AUSA Huynh advised me that, in his opinion, the affidavit and application are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

## Request for Sealing

13.   I further request that the Court issue an order sealing, until further order of the Court, all papers submitted in support of the requested arrest warrant, including the application, this affidavit, the attachments, and the requested arrest warrant. I believe that sealing these documents is necessary because the information to be seized is relevant to an ongoing investigation. Disclosure of the information at this time may endanger the life or physical safety of an individual, cause flight from prosecution, cause destruction of or tampering with evidence,

cause intimidation of potential witnesses, or otherwise seriously jeopardize an investigation. Premature disclosure of the contents of the application, this affidavit, and the attachments, and the requested arrest warrant may adversely affect the integrity of the investigation.

<u>*By phone pursuant to Fed. R. Crim. P. 4.1*</u>
PETER ARDISSONO
Special Agent, DEA

Sworn in accordance with the requirements of Fed. R. Crim. P.4.1 by telephone at <u>12:58 p.m.</u> a.m./p.m. on June <u>11</u>, 2025.

*Andrew Hallman*
_____
ANDREW D. HALLMAN
United States Magistrate Judge

Page 6 – Affidavit of Peter Ardissono